**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
KAREEM B. TAYLOR,

Plaintiff,

-against-

A&H SECURITY SERVICES, LLC,

Defendant.
---------------------------------------------------------------X

25-CV-07180 (VEC) (VF)

**REPORT & RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE Valerie E. Caproni, United States District Judge.**

Plaintiff Kareem B. Taylor ("Plaintiff"), proceeding *pro se*, filed a complaint against A&H Security Services, LLC ("A&H Security") that was removed to this Court on August 28, 2025. See ECF No. 1. Plaintiff filed an amended complaint on September 2, 2025 (ECF No. 15) and a second amended complaint on January 2, 2026 (ECF No. 39). Plaintiff asserts claims stemming from the termination of his employment at A&H Security on or about August 8, 2025. Pending before the Court is Plaintiff's motion to remand (ECF No. 13), A&H Security's motion to dismiss the first amended complaint (ECF No. 7), and A&H Security's motion to dismiss Plaintiff's second amended complaint under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 40). For the reasons set forth below, I respectfully recommend that Plaintiff's motion to remand be **DENIED**, and A&H Security's motions to dismiss be **GRANTED**. I further recommend that leave to amend be granted for certain claims as described herein.

## BACKGROUND[1]

A. Factual Background

Plaintiff, a New York resident, began working with A&H Security on or about July 14, 2024. ECF No. 1-1 at ¶ 3; ECF No. 39 at ¶ 5. Plaintiff was "paid to perform duties as Supervisor, F-80 Supervisor, Fire Life Safety Director[,] and Security Guard." ECF No. 1-1 at ¶¶ 3, 6-7. A&H Security provides security to homeless shelters through a contract with the New York City Department of Homeless Services ("DHS"). ECF No. 39 at ¶ 6.

On or about March 17, 2025, Plaintiff "sought to become a Fire Life Safety Director," which required A&H Security to provide a verification letter so that Plaintiff could take the necessary examination. ECF No. 1-1 at ¶ 4. Solomon Chijioke, the Vice President of Operations for A&H Security, provided Plaintiff with a "notarized verification letter stating that [ ] Plaintiff is employed as a security supervisor[.]" Id. The verification letter, dated March 17, 2025 (id. at 9), states that Plaintiff has been employed by A&H Security as an "F80 Supervisor" since August 8, 2024 (id.).[2]

---

[1] Because Plaintiff is *pro se*, the factual allegations recounted herein are taken from Plaintiff's complaint, first amended complaint, and second amended complaint, as well as Plaintiff's opposition to the motion to dismiss, and all exhibits Plaintiff attached thereto. See Smith v. New York City Dep't of Educ., No. 18-CV-8545 (PGG), 2019 WL 6307471, at *1 n.2 (S.D.N.Y. Nov. 25, 2019) (considering facts pled in *pro se* plaintiff's prior complaints on motion to dismiss); Brooks v. Jackson, No. 11-CV-6627 (JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint."); Monroe v. Jouliana, No. 20-CV-6807 (VB), 2021 WL 6052162, at *1 n.2 (S.D.N.Y. Dec. 20, 2021) ("Because plaintiff is proceeding *pro se*, the Court will consider both the additional allegations in plaintiff's opposition and the attached exhibits.").

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

On or around July 30, 2025, Janert Gil, A&H Security's Vice President of Compliance, informed Plaintiff that he had been working at A&H Security "as a security supervisor without authorization" because he had not been "promoted to supervisor." Id. at ¶¶ 5-6. Plaintiff had worked 28 shifts as a supervisor and had been paid at the rate of a supervisor for those shifts. Id. at ¶ 7. Gil informed Plaintiff that he could continue to work as a security guard or Fire Life Safety Director, but "he must be promoted to security supervisor to work as a supervisor." Id. at ¶ 8. Plaintiff felt "harassed" by Gil, "immediately filed a complaint with DHS regarding Gil's statements," and "[A&H Security] acknowledged the complaint and said they would investigate the matter." ECF No. 39 at ¶ 9.

In an e-mail dated July 28, 2025, Gil informed Plaintiff that he had "noticed" that Plaintiff had picked up shifts "in a supervisory capacity," and he "wanted to clarify who within the office [had] formally promoted [Plaintiff] to a Supervisor position."[3] Id. at 12. Gil went on to write that although Plaintiff held "an F-80 Certificate," that alone did "not fulfill all the requirements to serve as a Supervisor within A&H [Security]." Id. He added that Plaintiff was "classified as an FLSD" and could continue working shifts under that designation. Id.

In an e-mail dated July 30, 2025, Gil informed Plaintiff that although he had "picked up 28 shifts" as a supervisor, that was done by Plaintiff "independently . . . and not as part of an official supervisory assignment." ECF No. 1-1 at 11. He explained that Plaintiff had not "been formally promoted or assigned to a supervisor schedule by any account manager in the office." Id. Gil explained that while the company appreciated Plaintiff's "initiative and willingness to

[3] The e-mails discussed herein were provided by Plaintiff as exhibits to his complaints. "Exhibits attached to a complaint may also be considered on a motion to dismiss." Smith, 2019 WL 6307471, at *1 n.2.

support coverage needs, it is important to understand that picking up shifts through our dispatch service does not constitute a promotion, regardless of F-80 certification." Id.

In an e-mail dated August 6, 2025, Gil informed Plaintiff that there was "a formal process to become a supervisor with this company, which includes specific training and approval," and although Plaintiff had "picked up shifts in the past and [had been] compensated accordingly," that did not "constitute formal supervisor status within A&H [Security]." Id. at 10. Finally, Gil noted that Plaintiff would not be "recognized as a supervisor" at A&H Security until he met "the official requirements." Id.

On or about August 8, 2025, Gil informed Plaintiff that his employment with A&H Security was terminated because he could not accept "that he [was] not to work as [a] supervisor until he [was] promoted to supervisor."[4] Id. at ¶ 9; see also ECF No. 39 at ¶ 5. The termination letter states that Plaintiff's employment with A&H Security was terminated "effective August 8, 2025 due to insubordination," because Plaintiff was repeatedly "notified that [he] [was] not approved as an A&H Supervisor and may not seek to work in Supervisor shifts," but Plaintiff nonetheless "repeatedly refused to accept this" and refused to "comply with the company directive." ECF No. 1-1 at 12. The termination letter also indicates that Plaintiff had "communicated with company leadership and Human Resources in an extremely unprofessional and insubordinate manner." Id.

B. Procedural Background

On August 11, 2024, Plaintiff commenced this action in New York State Court, Bronx County against A&H Security. ECF No. 1-1. A&H Security sought removal of the case to this

[4] Plaintiff provided the termination letter, dated August 8, 2025, from Gil as an exhibit to his original complaint. ECF No. 1-1 at 12.

Court, and the case was removed to this Court on August 28, 2025. ECF No. 1. On September 2, 2025, Plaintiff filed a motion to remand the case to state court. ECF No. 13. The same day, Plaintiff also filed an amended complaint, which was identical to his original complaint except that the relief requested was reduced from $400,000 (ECF No. 1-1 at 6) to $69,000 (ECF No. 15 at 4). Defendant filed an opposition to the motion to remand on September 8, 2025. ECF No. 17.

On September 3, 2025, Defendant filed a motion to dismiss Plaintiff's original complaint. ECF No. 7. On September 12, 2025, the Court issued an order clarifying that it was construing the motion to dismiss the original complaint as a motion to dismiss the amended complaint. ECF No. 25.

On October 3, 2025, Plaintiff requested leave to file a second amended complaint. ECF No. 33. On October 7, 2025, the Court granted Plaintiff's request and directed Defendant to supplement its motion to dismiss upon review of the second amended complaint. ECF No. 34. Plaintiff filed his second amended complaint on January 2, 2026. ECF No. 39. Construing Plaintiff's claims liberally, as the Court is required to do, Plaintiff appears to assert a claim for wrongful termination in Counts I-II (id. at ¶¶ 7-8); a claim for retaliation in Count III (id. at ¶ 10); a claim for breach of contract in Count IV (id. at ¶ 11); and a claim for negligence in Count VII (id. at ¶ 14).[5]

---

[5] To the extent Plaintiff purports to assert a cause of action in Count V for "emotional and economic loss" (ECF No. 39 at ¶ 12), this is not a separate cause of action but rather an allegation concerning the alleged harm Plaintiff suffered as a result of Defendant's conduct. In Count VI, Plaintiff appears to be alleging that Gil has a "history of bringing false allegations" for which A&H Security is liable. Id. at ¶ 13. To the extent Plaintiff is attempting to assert a cause of action for fraud, Plaintiff has failed to adequately allege the misrepresentation or omission of material fact underlying such a claim. Plaintiff does not identify any false statements made by Gil to Plaintiff or someone else, much less how those statements led to Plaintiff's termination or whether A&H Security knew about the statements and knew them to be false. See Mali v. Brit. Airways, No. 17-CV-685 (KPF), 2018 WL 3329858, at *10 (S.D.N.Y. July 6, 2018) (explaining that prima facie case for fraud requires, *inter alia*, "a misrepresentation or a material omission of

A&H Security moved to dismiss the second amended complaint on January 30, 2026. ECF No. 40. Plaintiff filed an opposition to the motion to dismiss on April 20, 2026. ECF No. 55. A&H Security filed a reply in further support of its motion on April 27, 2026. ECF No. 57. By order dated March 2, 2026, the motion to remand and both motions to dismiss were referred to the undersigned for a report and recommendation. See ECF No. 48.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

fact which was false and known to be false by defendant" and an "injury"). Moreover, because Plaintiff is in federal court, he must plead his "fraud claim with the particularity required by Rule 9(b)," which requires that Plaintiff identify "the statements that the plaintiff contends were fraudulent." Id. at 11. Plaintiff has not identified any purportedly false statements, he has not identified where and when the statements were made, and he does not explain why the statements were fraudulent.

The Court is obliged to construe *pro se* pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); McKithen v. Brown, 481 F.3d 89, 96 (2d. Cir. 2007) (holding that pleadings and allegations of a *pro se* plaintiff must be construed liberally in Rule 12(b)(6) motions). But the "special solicitude" afforded *pro se* litigants, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks and citation omitted), has its limits—"a pro se complaint must state a plausible claim for relief." Hogan v. Fisher, 738 F.3d 509, 515 (2d Cir. 2013); see also Morren v. N.Y. Univ., No. 20-CV-10802 (JPO) (OTW), 2022 WL 1666918, at *12 (S.D.N.Y. Apr. 29, 2022) ("[T]he Court may not invent factual allegations that a plaintiff has not pled.") (internal quotation marks and citations omitted). The "factual allegations [must be] sufficient to raise a right to relief above the speculative level." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotation marks and citations omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citations omitted). Because issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, the Court has not considered them here. See Morren, 2022 WL 1666918, at *12.

## DISCUSSION

### A. Motion to Remand

In his original complaint, Plaintiff alleged that he suffered damages in the amount of $400,000. ECF No. 1-1 at 6. In his first amended complaint, Plaintiff reduced that amount to $69,000 (ECF No. 15 at 4) and sought to remand the case to state court because the amount in

controversy was below the $75,000 threshold for diversity jurisdiction under 28 U.S.C. § 1332(a)(1). See ECF Nos. 13-14. In his second amended complaint, however, Plaintiff again alleged that he suffered damages in the amount of $400,000. ECF No. 39 at 5.

"It is hornbook law that 'once a case that was initiated in state court has been removed properly, subsequent events that reduce the amount recoverable—such as the plaintiff[']s amendment of the complaint—will not defeat the federal court's subject-matter jurisdiction.'" Flynn v. Schwan's Consumer Brands Inc., No. 15-CV-4509 (CM), 2015 WL 4560870, at *1 (S.D.N.Y. July 27, 2015) (quoting 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3725.2 (4th ed. 2015)); see also St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938) (noting that although "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction"). Here, the amount in controversy in Plaintiff's original complaint exceeded $75,000, and thus the amount in controversy requirement in 28 U.S.C. § 1332 was satisfied at the time the case was removed to this Court. See ECF No. 1-1 at 6. Further, the amount in controversy still exceeds $75,000, as Plaintiff alleges that he suffered damages in the amount of $400,000 in his second amended complaint. ECF No. 39 at 5. And, to the extent Plaintiff attempted to defeat diversity jurisdiction by amending his complaint to reduce the amount in controversy, that attempt was futile. "[C]ourts in this circuit have repeatedly denied motions to remand based on amendments that reduced the demand sought by the complaint below the amount-in[-]controversy requirement." See Flynn, 2015 WL 4560870, at *2 (denying request for remand where plaintiff amended damages sought in complaint to below $75,000).

Additionally, there is diversity between Plaintiff and Defendant as required under Section 1332. Plaintiff is a resident of New York. ECF No. 1-1 at ¶ 1; ECF No. 15 at ¶ 1; ECF No. 39 at

¶ 1. In its application for removal, A&H Security stated that A&H Security is a domestic limited liability company ("LLC") and its sole member, Felix Cabreja, is domiciled in New Jersey, making A&H Security a citizen of New Jersey for purposes of diversity jurisdiction. ECF No. 1 at ¶¶ 10-11. Plaintiff does not contest this and instead indicates in his first and second amended complaints that A&H Security is a citizen of New Jersey. See ECF No. 15 at ¶ 3; ECF No. 39 at ¶ 3. "For the purposes of diversity jurisdiction, a limited liability company [ ] has the citizenship of its membership, not of its place of incorporation or its principal place of business." H. Daya Int'l Co. v. Do Denim LLC, No. 11-CV-4028 (JCF), 2012 WL 2524729, at *2 (S.D.N.Y. June 29, 2012) (citing Handelsman v. Bedford Village Associates LLC, 213 F.3d 48, 51 (2d Cir. 2000)). As such, A&H Security is a citizen of New Jersey. There thus is diversity between the parties.

I therefore recommend the denial of Plaintiff's motion to remand, because removal was proper and this Court has subject-matter jurisdiction over Plaintiff's claims.

B. Wrongful Termination

Plaintiff alleges a claim for wrongful termination, claiming that he was wrongfully terminated "for not being promoted as a supervisor when in fact he was already a supervisor and recognized . . . as a supervisor." ECF No. 1-1 at ¶ 10; see also ECF No. 39 at ¶¶ 7-8. A&H Security argues that Plaintiff's allegation of wrongful termination does not raise a cognizable claim, because Plaintiff admits the employment relationship was at-will and Plaintiff was terminated for refusing to accept that he was not authorized to work as a supervisor. ECF No. 42 at 8-9.

As an initial matter, there is no stand-alone claim for wrongful termination in New York. See, e.g., Rayskin v. City of New York, No. 16-CV-2311 (AT), 2018 WL 8201893, at *3

(S.D.N.Y. June 26, 2018) ("Apart from breach of an employment contract, no claim for wrongful termination exists in New York.") (internal quotation marks and citation omitted); Pierre v. Cap. One Fin. Corp., No. 21-CV-30 (PKC) (JRC), 2022 WL 801321, at *4 (E.D.N.Y. Mar. 16, 2022) ("New York . . . does not recognize a cause of action for wrongful discharge.") (internal quotation marks and citations omitted). Consequently, to assert a claim for wrongful termination, Plaintiff would have to point to either a breach of an employment agreement, see Gallagher v. Savarese, No. 99-CV-4181 (LMM), 2001 WL 1382581, at *4 (S.D.N.Y. Nov. 7, 2001), or the violation of a statute, such as termination due to unlawful discrimination based on race, disability, or age. See, e.g., McClain v. New York State Dep't of Tax'n & Fin., No. 13-CV-3104 (NGG) (RML), 2014 WL 4101517, at *5 (E.D.N.Y. Aug. 18, 2014) ("An employee may bring a claim under Title VII if an employer unlawfully discharges the employee because of race, color, religion, sex, or national origin.") (internal quotation marks and citation omitted); see also Yang v. Bank of New York Mellon Corp., No. 20-CV-3179 (AJN), 2021 WL 1226661, at *7 (S.D.N.Y. Mar. 31, 2021) ("[A]n employer's right to terminate an at will employee for any reason remains unimpaired unless by a constitutionally impermissible purpose, a statutory proscription, or in some instances . . . an employer may be contractually prevented from terminating an employee by an express limitation in the individual contract of employment.") (internal quotation marks omitted).

Plaintiff does not allege that he was terminated due to his race, age, or disability. To the contrary, his entire claim is grounded in an allegation that he was wrongfully terminated "for not being approved and authorized as a supervisor" despite having been "authorized and approved" to work as a supervisor. ECF No. 39 at ¶¶ 7-9; see also ECF No. 1-1 at ¶ 10 (alleging he was wrongfully terminated "for not being promoted as a supervisor when in fact he was already a

supervisor"); ECF No. 15 at ¶ 13 (same). Further, Plaintiff points to no contract of employment, let alone an express limitation restricting Defendant's ability to terminate Plaintiff's employment. Instead, he acknowledges that New York is an "at-will" employment state. ECF No. 20 at ¶ 7. Plaintiff was an at-will employee. See Brown v. Daikin Am. Inc., 756 F.3d 219, 231 (2d Cir. 2014) (explaining that "[u]nder New York law, employment for an indefinite or unspecified term is presumed to be at will" unless the employee can rebut the presumption by "demonstrating an express limitation in the individual contract of employment curtailing an employer's right to terminate at will") (internal quotation marks and citations omitted); Reddington v. Staten Island Univ. Hosp., 373 F. Supp. 2d 177, 190 (E.D.N.Y. 2005), aff'd in part, question certified by, 511 F.3d 126 (2d Cir. 2007) ("In the absence of allegations sufficient to show the existence of an employment agreement, the Court presumes plaintiff was an at-will employee[.]"). And in New York, an at-will employee can be terminated "at any time, for any or no reason whatsoever, so long as the termination is not effected for a discriminatory reason." Hunter v. Kaufman Enters., Inc., No. 09-CV-5540 (JS) (AKT), 2011 WL 3555809, at *3 (E.D.N.Y. Aug. 8, 2011).

Plaintiff argues that he fulfilled the policy "of documented training, and [ ] was approved as a supervisor[,]" and thus A&H Security could fire him "for any reason except for not meeting the policy of advancement to Supervisor." ECF No. 20 at ¶ 1. To support this argument, Plaintiff relies on the verification letter, which states that Plaintiff is an F80 Supervisor. ECF No. 1-1 at 9. But the verification letter is not an employment agreement, and the verification letter does not include any limitation (express or implied) restricting A&H Security's right to terminate Plaintiff for any reason. All that the verification letter states is that Plaintiff "was/is employed [for A&H Security] in the title of F80 Supervisor," it provides Plaintiff's dates of employment, and it

describes his responsibilities as they relate to fire-prevention activities. Id.; see, e.g., Hunter, 2011 WL 3555809, at *4 (dismissing wrongful-termination claim where "the Plaintiff fails to identify any express written policy limiting the employer's rights of discharge"); Pierre, 2022 WL 801321, at *6 (dismissing wrongful-termination claim where "there is nothing in the Code of Conduct that can reasonably be construed as an express policy *limiting* [the company's] right to discharge its employees") (emphasis in original); see also Ghuge v. Virtusa Corp., No. 19-CV-8091 (PGG), 2020 WL 6490876, at *4 (S.D.N.Y. Nov. 3, 2020) (compensation letter which stated that the company "look[ed] forward to [plaintiff's] continued commitment" was insufficient to establish an employment contract).

Further, even if the verification letter constituted an employment agreement (and it does not), the letter is silent on the terms on which A&H Security could terminate Plaintiff's employment. The letter thus does not suffice to plausibly allege that A&H Security agreed to limit its ability to fire Plaintiff for any lawful reason. See, e.g., Uzoigwe v. Charter Commc'ns, LLC, No. 23-CV-7383 (HG) (LB), 2024 WL 1311525, at *7 (E.D.N.Y. Mar. 18, 2024), adopted by, 2024 WL 1756503 (E.D.N.Y. Apr. 24, 2024) (dismissing breach-of-contract claim where "Plaintiff's complaint fails to identify any express written policy, or oral assurance incorporated into a written policy, that would create an implied-in-fact agreement altering plaintiff's at-will employment status") (internal quotation marks and citation omitted); Wood v. ViacomCBS/Paramount, No. 22-CV-6323 (LTS) (KHP), 2024 WL 4451742, at *8 (S.D.N.Y. July 15, 2024), adopted by, 2024 WL 4263117 (S.D.N.Y. Sept. 23, 2024) (dismissing *pro se* plaintiff's wrongful-discharge claim where plaintiff "points to no employment contract or policy that renders him anything other than an at-will employee").

In short, because Plaintiff does not point to the existence of an employment agreement, or contend that he was terminated for a constitutionally impermissible basis, I recommend dismissal with prejudice of his wrongful-termination claim, because there is no stand-alone claim for wrongful termination in New York. See Rayskin, 2018 WL 8201893, at *4 (denying *pro se* plaintiff leave to amend wrongful-termination claim because "no such cause of action exists"); Ashmeade v. Citizens Bank, No. 17-CV-8994 (JGK), 2018 WL 3093963, at *7 (S.D.N.Y. June 22, 2018) (dismissing *pro se* plaintiff's wrongful-termination claim with prejudice); Kamdem-Ouaffo v. Balchem Corp., No. 17-CV-2810 (KMK), 2018 WL 4386092, at *11 (S.D.N.Y. Sept. 14, 2018) (dismissing wrongful-termination claim with prejudice "as no amendment can change the law on this point" that at-will employees are freely terminable).

C. Breach of Contract

Plaintiff alleges that he worked as a supervisor "through approval and authorization," and that "[t]here was an agreement that [ ] [P]laintiff could be fired for any reason or no reason, except for not being approved and authorized to be a supervisor." ECF No. 39 at ¶ 11. Defendant argues that this cannot constitute an agreement because the alleged contract "is not reasonably certain in its material terms." ECF No. 42 at 13.

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Edwards v. Sequoia Fund, Inc., 938 F.3d 8, 12 (2d Cir. 2019) (quotation omitted). An at-will employee can establish a breach of an implied contract by showing that: "'(1) the employee was induced to leave his prior employment by the assurance that his new employer would not discharge him without cause, (2) the assurance was incorporated into the employment application, (3) the employee rejected other offers of

employment in reliance on the assurance, and (4) the employment was subject to the provisions of a personnel handbook or manual which provided that dismissal would be for just and sufficient cause only.'" Jenkins v. NYC Health & Hosps. Corp., No. 21-CV-2848 (JGK), 2023 WL 4534637, at *5-6 (S.D.N.Y. July 13, 2023) (quoting O'Reilly v. Citibank, N.A., 603 N.Y.S.2d 572, 573 (App. Div. 1993)); see also Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 358 (S.D.N.Y. 2006) ("If assurances of job security are made by the employer, coupled with express provisions in an employee manual limiting an employer's ability to terminate at will, and the employee relies on these assurances, a contract may be implied.").

As already discussed, Plaintiff points to no written agreement concerning the terms of his employment, and the verification letter is not an employment agreement. Additionally, the termination of an at-will employee cannot form the basis for a breach of contract claim. See Reddington, 511 F.3d at 138 ("[Plaintiff] has not alleged sufficient facts to suggest that she was not an at-will employee, and therefore she has not adequately alleged that the [defendant] breached an employment contract by terminating her."); Ghuge, 2020 WL 6490876, at *4 ("Because Plaintiff was an at-will employee, his termination provides no basis for a breach of contract claim.").

Plaintiff alleges that there was "an implied contract that when [Plaintiff] was hired, trained, and approved as Supervisor that [his] termination could be for anything except for not being hired, trained[,] and approved as Supervisor." ECF No. 20 at ¶ 6. But Plaintiff has not alleged facts sufficient to support any of the requisite elements for a claim of breach of an implied contract, such as, for example, that he was induced to leave his prior employment with assurances that he would not be fired without cause, or that he rejected other offers of employment in reliance on such an assurance. See Jenkins, 2023 WL 4534637, at *6 (reasoning

that plaintiff's claim for breach of an implied contract was futile where plaintiff "d[id] not allege that he was induced to leave his prior employment by the assurance that [his employer] would not discharge him without cause, that any such assurance was incorporated into his employment application, or that he rejected other offers of employment in reliance on the assurance"); Slue, 409 F. Supp. 2d at 358 (declining to find the existence of an implied employment contract on summary judgment where "no oral assurances that [plaintiff] would be terminated only for just cause were made, and there is no evidence presented of detrimental reliance, such as turning down other jobs" and "the handbook language upon which plaintiff relies does not suggest a limitation on at-will employment").

A&H Security argues that any oral agreement limiting its ability to terminate Plaintiff's employment is barred by the Statute of Frauds because it could not have been performed within one year. ECF No. 42 at 14-15. But this argument is misplaced. "A contract is void under New York law unless it is reduced to a writing if it '[b]y its terms is not to be performed within one year from the making thereof.'" Grasso v. Donnelly-Schoffstall, No. 21-CV-1021, 2022 WL 728839, at *2 (2d Cir. Mar. 11, 2022) (quoting N.Y. Gen. Oblig. L. § 5-701(a)(1)). However, "where employment is terminable at will, the statute of frauds is not a bar to enforcement of the alleged oral agreement because its performance within one year is possible," given the ability to exercise the right of termination at will. Arias-Zeballos v. Tan, No. 06-CV-1268 (GEL), 2008 WL 833225, at *4 (S.D.N.Y. Mar. 28, 2008) (internal quotation marks, citation, and alterations omitted); Curtis v. Harry Winston, Inc. 653 F. Supp. 1504, 1510 (S.D.N.Y. 1987) (holding that statute of frauds does not prevent recovery on oral contract for an "at-will employee" who "could have been terminated . . . at any time"); see also Eisenberg v. Yes Clothing Co., No. 90-CV-8280 (JFK), 1992 WL 36129, at *2 (S.D.N.Y. Feb. 19, 1992) ("Because the alleged employment

agreement in this case could have been fulfilled within one year, the one-year provision of the statute of frauds is inapplicable.”).

Nonetheless, at bottom, “Plaintiff cannot cure the deficiency in [his] wrongful termination claim by recasting it as a breach of contract claim.” Zaltz v. Wells Fargo Home Mortg., No. 08-CV-11225 (BSJ), 2010 WL 3026536, at *5 (S.D.N.Y. Aug. 2, 2010). Because Plaintiff has failed to allege an express or implied contract that was breached by A&H Security, I recommend that Plaintiff's breach of contract claim be dismissed. However, because Plaintiff is *pro se*, I recommend that Plaintiff be given leave to amend his complaint in the event he is able to identify an employment agreement that governed the terms of his employment with A&H Security or some other document, manual, or policy that otherwise limited A&H Security's ability to terminate Plaintiff's employment for any reason. See Elliott v. Nestle Waters N. Am. Inc., No. 13-CV-6331 (RA), 2014 WL 1795297, at *1 (S.D.N.Y. May 6, 2014) (granting *pro se* plaintiff leave to amend for claim for breach of an implied employment contract); Uzoigwe, 2024 WL 1311525, at *8 (granting *pro se* plaintiff leave to amend his breach of contract claim as an at-will employee “[a]though it seems like a very unlikely long-shot”). If leave to amend is granted, Plaintiff should include allegations regarding any employment handbook, written document, or agreement that limited A&H Security's ability to terminate him. Alternatively, if such a document does not exist, Plaintiff should include allegations to support a plausible inference that Plaintiff refused another job relying on assurances from A&H Security that he would not be fired without cause.

D. Retaliation

Plaintiff also asserts a claim for retaliation. Plaintiff alleges that he felt “harassed” by Gil's e-mails and “immediately filed a complaint with DHS regarding Gil's statements.” ECF

No. 39 at ¶¶ 9-10. Plaintiff also alleges that A&H Security "retaliated against [P]laintiff because he made a complaint to DHS[.]" Id. at ¶ 10. Plaintiff does not cite to a statute under which he asserts his retaliation claim, and New York law does not recognize a "common[-]law claim for retaliation." See Farmer v. Fzoad.com Enters. Inc., No. 17-CV-9300 (GBD) (OTW), 2020 WL 5569581, at *4 (S.D.N.Y. Sept. 17, 2020); see also Cohen v. United States, 640 F. Supp. 3d 324, 344 (S.D.N.Y. 2022) ("That a handful of New York cases . . . mention the word 'retaliation' does not demonstrate a freestanding New York common law tort claim for retaliation."). Nor has Plaintiff alleged that he was retaliated against because he sought an accommodation for a disability or complained of a racially discriminatory policy or practice by A&H Security. See Lynk v. Henderson, No. 98-CV-2086 (MGC), 2000 WL 178859, at *4 (S.D.N.Y. Feb. 15, 2000) ("Plaintiff may only maintain a claim for retaliation in response to protected activity. Protected activity refers to action taken to protest or oppose statutorily prohibited discrimination.") (internal quotation marks and citation omitted); Trane v. Northrop Grumman Corp., 94 F. Supp. 3d 367, 376-77 (E.D.N.Y. 2015), aff'd by, 639 F. App'x 50 (2d Cir. 2016) (noting that retaliation claims may be made on the basis of national origin or disability discrimination).

Plaintiff alleges that he filed a complaint about Gil's behavior. But "[a] complaint does not constitute protected activity 'if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" McDonald v. Pharney Grp. LLC, No. 23-CV-06025 (JAV), 2026 WL 787750, at *7 (S.D.N.Y. Mar. 20, 2026) (quoting Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013) (per curiam)). Plaintiff may believe Gil was rude or unfair, but "unfair treatment is not actionable under the civil rights laws and a complaint about it does not constitute protected activity. To be actionable, the unfair treatment must be due to one's membership in a protected class and the

complaint must make that point sufficiently clear." Id. (internal quotation marks, citation, and alteration omitted); see also Antrobus v. New York City Dep't of Sanitation, No. 11-CV-5434 (CBA) (LB), 2016 WL 5394697, at *6-8 (E.D.N.Y. Feb. 25, 2016), adopted by, 2016 WL 5390120 (E.D.N.Y. Sept. 26, 2016), aff'd by, 704 F. App'x 27 (2d Cir. 2017) (finding "rude and unprofessional" comments insufficient to suggest discrimination for disparate treatment and retaliation claim). And Plaintiff has no allegations in his complaint to suggest that his treatment by Gil was due to discriminatory animus.

A&H Security suggests that Plaintiff may be asserting a retaliation claim under New York Labor Law ("NYLL") § 740. ECF No. 42 at 10-11. But as explained herein, such a claim has not been adequately pled. NYLL § 740 prohibits an employer from taking "any retaliatory personnel action against an employee because such employee . . . discloses . . . to a supervisor . . . an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." Sokolovsky v. Silver Lake Specialized Care Ctr., No. 21-CV-1598 (MKB), 2023 WL 5977298, at *18 (E.D.N.Y. Sept. 14, 2023) (quoting N.Y. Lab. Law § 740(2)(a)). To state a cause of action, "a plaintiff must allege facts supporting the conclusion that (1) he was subject to a retaliatory personnel action after (2) disclosing to a supervisor (3) a practice of the employer that is in violation of a law, rule, or regulation (4) that creates and presents a substantial and specific danger to the public health or safety." Arazi v. Cohen Bros. Realty Corp., No. 20-CV-8837 (GHW), 2022 WL 912940, at *10 (S.D.N.Y. Mar. 28, 2022) (citations omitted). Section 740(1)(c) defines a "law, rule or regulation" to include "(i) any duly enacted federal, state or local statute or ordinance or executive order; (ii) any rule or regulation promulgated pursuant to such statute or ordinance or executive order; or (iii) any judicial or

administrative decision, ruling or order." N.Y. Lab. Law § 740(1)(c). "For pleading purposes, the complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." Klein v. Brookhaven Health Care Facility, No. 17-CV-4841 (JS) (AKT), 2019 WL 1459258, at *9 (E.D.N.Y. Mar. 11, 2019), adopted by, 2019 WL 1458219 (E.D.N.Y. Mar. 31, 2019) (citation omitted).

Plaintiff alleges that he sent Gil an e-mail about a co-worker who was not wearing the correct uniform, and that Gil responded by notifying Plaintiff that he was not approved and authorized to work as a supervisor. ECF No. 39 at ¶ 9. Plaintiff claims that he "felt harassed" by Gil's response to Plaintiff's inquiry and filed a complaint with A& H Security. Id. at ¶ 10. Plaintiff, however, does not identify any activity, policy, or practice that A&H Security engaged in that was unlawful or posed a danger to public health or safety. See Klein, 2019 WL 1459258, at *10 (dismissing claim under NYLL § 740 where plaintiff made "vague references to whistleblowing regarding public health or safety"); Dougherty v. Mem'l Sloan-Kettering Cancer Ctr., No. 00-CV-4083 (JGK), 2002 WL 1610916, at *4 (S.D.N.Y. July 22, 2002) (dismissing NYLL § 740 claim at summary judgment where "plaintiff has raised a number of complaints about the defendant's internal practices, and has indicated that she believes that these practices violated FDA regulations and the defendant's own internal policies and procedures" but had not identified any statutory or regulatory provisions that were violated).

Plaintiff's complaint could also be construed as asserting a claim under NYLL § 215. However, that claim also fails. Section 215 "prohibits an employer from discharging, penalizing, or discriminating against an employee who complains about a violation of the Labor Law."

Zhang v. Centene Mgmt. Co., LLC, No. 21-CV-5313 (DG) (CLP), 2023 WL 2969309, at *11 (E.D.N.Y. Feb. 2, 2023) (citing N.Y. Lab. Law § 215(1)(a)). "To establish a claim of retaliation under Section 215, the plaintiff must allege (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Id. (internal quotation marks, citation, and alteration omitted). "[C]ourts have required the employee to complain about conduct that is a violation of the Labor Law in order to pursue a claim of retaliation." Id. (collecting cases).

Here, Plaintiff alleges that he felt "harassed" and filed a complaint with DHS "regarding Gil's statements." ECF No. 39 at ¶ 10. But Plaintiff does not point to conduct by Gil amounting to a Labor Law violation. And to the extent Plaintiff is complaining about statements made by Gil in e-mails to Plaintiff, Plaintiff included the e-mails as attachments to his complaint. A review of those e-mails does not support a plausible inference of any wrongful conduct by Gil, let alone conduct that violates the Labor Law. Although Plaintiff's complaint to DHS could constitute protected activity under the Labor Law, see Carrasco v. Metro. Transit Auth., No. 24-CV-4265 (LGS), 2025 WL 1939052, at *6 (S.D.N.Y. July 15, 2025), he has not alleged that he complained about any conduct by anyone at A&H Security that could be a violation of the Labor Law. See McSweeney v. Cohen, 776 F. Supp. 3d 200, 275 (S.D.N.Y. 2025) (dismissing NYLL § 215 claim because plaintiff "does not allege that she complained about conduct that constitutes an independent violation of the New York Labor Laws"); HC2, Inc. v. Delaney, 510 F. Supp. 3d 86, 100 (S.D.N.Y. 2020) (dismissing NYLL § 215 claim because the "complaint does not allege that [plaintiff] made a complaint about a violation of the New York Labor Laws or an order of the Commissioner of Labor").

In sum, I recommend that Plaintiff's retaliation claim be dismissed. However, because of Plaintiff's *pro se* status, I recommend permitting Plaintiff an opportunity to amend his complaint. See Williams v. Classic Sec., No. 18-CV-1691 (CM), 2018 WL 11249804, at *4 (S.D.N.Y. Apr. 2, 2018) (granting *pro se* plaintiff leave to amend his retaliation claim); Moroshkin v. Nat'l Council on the Aging Senior Cmty. Serv. Emp. Program (SCSEP), No. 23-CV-1301 (LTS), 2023 WL 5609304, at *5 (S.D.N.Y. Aug. 30, 2023) (same). If leave to amend is granted, Plaintiff should include factual allegations pointing to unlawful conduct by someone at A&H Security or conduct by someone at A&H Security that poses a public health or safety concern, and explain how Plaintiff complained of such conduct to A&H Security. If Plaintiff instead intended to bring a retaliation claim based on his race or some other protected characteristic (such as age or disability) then Plaintiff should include factual allegations to demonstrate how he was retaliated against by A&H Security based on that protected characteristic.

E. Negligence

Plaintiff also brings a claim for negligence, alleging that "his discharge is due to [A&H Security's] negligence" for "not being approved and authorized as a supervisor" and "due to miscommunications in [A&H Security]." ECF No. 39 at ¶ 8. Additionally, Plaintiff may be attempting to assert a negligent-misrepresentation claim, based on his allegation that "Company leader Soloman" verified Plaintiff's training and authorized his employment as a supervisor. Id. at ¶ 14.

"The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." Sullivan v. Gelb, 735 F. Supp. 3d 282, 301-02 (S.D.N.Y. 2024) (internal quotation marks and citations omitted). "In order for plaintiff to maintain claims for negligent

misrepresentation or negligence, [he] must allege that there was a special relationship of trust and confidence between the parties." Toledo Fund, LLC v. HSBC Bank USA, Nat. Ass'n, No. 11-CV-7686 (KBF), 2012 WL 364045, at *6 (S.D.N.Y. Feb. 3, 2012); see also Sparago v. Beaver Mountain Log Homes, Inc., No. 20-CV-276 (KMK), 2021 WL 965448, at *6 (S.D.N.Y. Mar. 15, 2021) (quoting Gen. Star Indem. Co. v. Platinum Indem. Ltd., No. 00-CV-4960 (LMM) (GWG), 2002 WL 31159106, at *3 (S.D.N.Y. Sept. 27, 2002)) (noting that a duty will be found "where a 'special relationship' exists directly between the plaintiff and defendant . . . like privity of contract, or a relationship sufficiently approaching privity"). "If the defendant owes no duty to the plaintiff, the action must fail." Sullivan, 735 F. Supp. 3d at 302 (citation omitted).

A&H Security is correct that Plaintiff has alleged no special relationship between himself and A&H Security outside of the employee-employer relationship. ECF No. 42 at 15-16. An employer may owe an employee certain duties, such as a duty to provide a safe workplace, Williams v. Long Island R.R. Co., 196 F.3d 402, 407 (2d Cir. 1999), or a duty to properly supervise and oversee the conduct of its employees. See Moore Charitable Found. v. PJT Partners, Inc., 40 N.Y.3d 150, 162 (2023). But an employee-employer relationship alone is not a special relationship that supports the existence of a duty for a negligent misrepresentation or negligence claim. See Cohen v. Avanade, Inc., 874 F. Supp. 2d 315, 327 (S.D.N.Y. 2012) (explaining that "the relationship between employer . . . and employee is not fiduciary in nature and thus does not constitute a 'special relationship' for purposes of a negligent misrepresentation claim"); Kwon v. Yun, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009) (explaining that "the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation" and noting that "[t]he employer-employee relationship is not fiduciary in nature") (alteration in original).

Moreover, even if Plaintiff had alleged the existence of a special relationship sufficient to support a duty owed to him by A&H Security, Plaintiff has not alleged that he suffered any injury. Plaintiff appears to be alleging that A&H Security was negligent in allowing him to work as a supervisor, aware that he was taking such shifts. ECF No. 39 at ¶ 14. But if A&H Security was negligent in that respect, then Plaintiff benefitted from A&H Security's purported negligence because he was allowed to take supervisor shifts which paid a higher hourly rate. See ECF No. 1-1 at ¶ 7; ECF No. 15 at ¶ 10; see also ECF No. 27 at 2-10, 14. It is thus not clear how Plaintiff was injured even if A&H was negligent in allowing him to work supervisor shifts. See Pasternack v. Lab'y Corp. of Am., 892 F. Supp. 2d 540, 556 (S.D.N.Y. 2012) (dismissing negligence claim where plaintiff "has not offered a plausible theory as to how [defendant] caused him injury"); Wesley v. Hofstra Univ., No. 08-CV-3332 (JS) (ETB), 2009 WL 10708819, at *5 (E.D.N.Y. Aug. 7, 2009) (dismissing negligence claim where plaintiff failed to plead an injury resulting from defendant's negligence).

Further, to the extent Plaintiff's injury for the negligence claim is A&H Security's improper termination of Plaintiff's employment (see ECF No. 39 at ¶ 14), any negligence claim still fails. Apart from the failure to allege facts establishing the existence of a duty, "[n]egligence may not be used to circumvent the well-established principle of New York law that an at-will employee may be discharged for any reason or no reason at all." Ashmeade, 2018 WL 3093963, at *5 (internal quotation marks and citation omitted). Thus, if Plaintiff's injury is the termination of his employment, then the negligence claim would be an improper attempt to restrict A&H Security's ability to fire an at-will employee for any reason.

In sum, I recommend that Plaintiff's negligence claim be dismissed with prejudice. See Toledo Fund, LLC, 2012 WL 364045, at *6 (dismissing negligence claims with prejudice

because "[t]here are no plausible facts asserted in the complaint that suggest that there was any type of special relationship between the parties").

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Plaintiff's motion to remand be **DENIED,** and A&H Security's motions to dismiss be **GRANTED** with leave to amend as outlined herein.

DATED: New York, New York
June 22, 2026

VALERIE FIGUEREDO
United States Magistrate Judge

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Valerie E. Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**